UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASHLEY S. FAWCETT,<br><br>              Plaintiff(s),<br><br>     v.<br><br>THE STANDARD FIRE INSURANCE COMPANY,<br><br>              Defendant(s). | CASE NO. C23-0248-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Ashley Fawcett was in a car accident while she was covered by an insurance policy issued by Defendant Standard Fire Insurance Company (doing business as Travelers Insurance Company ("Travelers")) that provided coverage for underinsured motorist ("UIM") bodily injury and personal injury protection ("PIP"). After Fawcett filed a claim with the other driver's insurer, Fawcett also opened UIM and PIP claims with Travelers, and alleges in this lawsuit that Travelers unreasonably handled her UIM claim. Dkt. No. 1.

Travelers moved for summary judgment, arguing that its conduct was reasonable at all relevant times. Dkt. No. 25. Travelers also argues that Fawcett's claims fail because she has not put forward any evidence quantifying her damages that are attributable to Travelers. *Id*.

Fawcett does not object to dismissal of two of her claims, but the Court will otherwise deny Travelers' motion because the Court finds a question of fact as to whether Travelers' conduct was

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

reasonable and commensurate with its obligation to act with ordinary care, and likewise finds that the jury should determine whether Fawcett's damages are attributable to Travelers.

## I. BACKGROUND

In December 2017, Fawcett requested a PIP claim application from Travelers arising from her March 2017 accident and informed Travelers that she would file a UIM claim if the limits of the at-fault driver's Progressive insurance policy were insufficient to address her injuries. *See* Dkt. No. 26 ¶ 5. In response to Fawcett's filing a PIP claim, Travelers agreed to handle the PIP claim under a reservation of rights. Dkt. Nos. 27-4, 27-5. The PIP claim adjuster asked a nurse to perform an initial review of the medical evidence, and to address whether Fawcett's injuries were caused by her accident and whether the nurse recommended an independent medical exam. Dkt. No. 35-2 at 56–59. The nurse opined that Fawcett's injuries were not caused by her accident, based on the available information, but the nurse recommended peer review if other information became available or if Fawcett required more treatment. *Id*. The PIP adjuster requested peer review from a neurosurgeon, Dr. Brad Ward, who opined that Fawcett's back condition *was* caused by the car accident, and Travelers thereafter paid Fawcett PIP benefits until they were exhausted in August 2018. Dkt. No. 27-6, Dkt. No. 35-2 at 46–47.

In January 2019, Travelers reassigned Kristel Bush to adjust Fawcett's potential UIM claim.[1] Dkt. No. 26 ¶ 13; Dkt. No. 35-2 at 39. Bush determined that a nurse review of the medical evidence was necessary, and asked the same nurse that had initially reviewed the evidence for the PIP claim to review the evidence for the UIM claim. *See* Dkt. No. 35-2 at 33–34. This time, that nurse was asked only to address causation (not the need for an independent medical exam), and

---

[1] Fawcett requested that Travelers keep her PIP and UIM claims files separate, without any sharing between the files, and Travelers assigned different people to adjust each claim. *See* Dkt. No. 35-20 at 4–13. Fawcett alleges that Bush reviewed the PIP file, in contravention of Fawcett's request to keep the claims files separate. Dkt. No. 33 at 8–9.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

she provided a similar causation opinion that she had provided with respect to the PIP claim: that based on the reviewed information (which did not include Dr. Ward's report), Fawcett's injuries were not caused by the accident. *Id*. at 32–33.

In October 2019, Travelers reassigned James Burnham to adjust Fawcett's UIM claim. Dkt. No. 35-2 at 31. Fawcett's attorney contacted Burnham to let him know Fawcett needed another surgery and that the Progressive policy limits were $250,000. *Id*. at 30. Burnham contacted the Progressive adjuster, who confirmed those policy limits. *Id*. at 29.

Thereafter, after Fawcett continued to seek medical treatment, she made a policy-limits demand to Progressive. *See* Dkt. No. 35-18. Travelers approved and consented to Fawcett's policy-limits settlement with Progressive, and allowed her to settle the claim directly with Progressive. Dkt. No. 35-2 at 26–28. Travelers refused to waive its subrogation interest in the PIP benefits it had already paid out, and Fawcett's counsel held back $10,000 of the Progressive settlement funds in case Travelers eventually pursued that interest. *See id*. at 12–13, 17–20.

Travelers then requested a settlement demand from Fawcett's counsel, who submitted a demand for $538,183.64. *See* Dkt. No. 35-2 at 16. Based on his review of the records, which included the opinion of Fawcett's treating provider that her symptoms were more likely than not caused by her accident, Burnham's notes indicate that he believed an independent medical exam was needed in order to resolve the causation question. Dkt. No. 35-21 at 75–78.

No independent medical exam was obtained, however, before Travelers subsequently offered to resolve the UIM claim for a full waiver of the PIP reimbursement ($10,000). Dkt. No. 35-22 at 11. Fawcett's counsel indicated that he did not find this to be a meaningful offer but reiterated his willingness to negotiate the claim in response to a meaningful offer. *Id*. Subsequent negotiations continued to be unsuccessful (*id*. at 7–10), and the parties eventually agreed to mediate in January 2021. *Id*. at 2–7. Fawcett sought the maximum she could receive in civil

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

arbitration ($100,000), but the most Travelers was willing to pay was $25,000 plus certain fees, and mediation was unsuccessful. Dkt. No. 26 ¶ 34; Dkt. No. 35-2 at 10. Fawcett subsequently filed suit in Pierce County Superior Court and filed a statement of arbitrability. Dkt. No. 26 ¶ 36, Dkt. No. 26-4.

The case was arbitrated in June 2021. Dkt. No. 26-6. In anticipation of arbitration, Travelers requested a records review from an orthopedic surgeon, Dr. Alan Brown. Dkt. No. 26 ¶ 37. Dr. Brown opined that, after reviewing 2017 and 2018 MRIs, Fawcett's symptoms were related to pre-existing disease and were not caused, exacerbated, or aggravated by the accident.[2] Dkt. No. 26-5. The arbitrator awarded Fawcett the maximum of $100,000 (plus $10,000 setoff for PIP benefits paid). Dkt. No. 26-6.

Travelers filed an appeal of the arbitration award, requesting a *de novo* trial, taking the position "that issues regarding the relatedness of the claimed injuries to the subject accident and the amount of damages remained unresolved after the arbitration." Dkt. No. 26 ¶ 40. After that trial had been requested, but had not yet commenced, Fawcett required a third surgery, which was performed in January 2022. *Id.* ¶ 41. Travelers requested another independent medical exam with Dr. Brown for the purpose of determining whether the third surgery was caused by the accident. *Id.* ¶ 42. Dr. Brown reviewed the same records again (including the mistaken-identity 2018 MRI report) and concluded that all of Fawcett's surgeries were related to radiculopathy that was not caused by the accident. Dkt. No. 26-7.

Trial commenced in March 2022, five years after Fawcett's car accident. Dkt. No. 26 ¶ 44. The jury awarded Fawcett $849,016.44 (which was later reduced to policy limits of $500,000),

---

[2] According to Fawcett, it was later revealed (when Dr. Brown was on the witness stand at the subsequent trial) that the 2018 MRI that Dr. Brown reviewed was not Fawcett's but pertained to another person. Dkt. No. 33 at 15–16, Dkt. No. 35-24. It is not clear from the briefing whether this mistake had been discovered by Travelers until that point.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

and the Pierce County Superior Court awarded her $219,026.08 in attorney's fees and costs. *Id*. ¶¶ 44–47, Dkt. No. 26-8.

Fawcett later filed this action, alleging claims against Travelers for bad faith, violation of Washington's Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act ("CPA"), and negligent claims handling, among other things. Dkt. No. 1. Travelers filed a motion for summary judgment on all of Fawcett's claims. Dkt. No. 26. The Court has considered the parties' briefing and heard oral argument, and now turns to resolve Travelers' motion.

## II.   ANALYSIS

### A.   Legal Standards on Summary Judgment

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 242, 248 (1986).

In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249.

**B.     There Are Questions of Fact as to Whether Travelers' Conduct Was Reasonable That Preclude Summary Judgment on Fawcett's Remaining Claims.**

Travelers requests summary judgment on each claim raised by Fawcett. Dkt. No. 25. Although Fawcett stipulates to the dismissal of her claims for breach of contract and breach of fiduciary duty (Dkt. No. 33 at 19, 23), she opposes Travelers' motion in all other respects. The Court will first identify the elements of each remaining claim in dispute, and then explain why these claims must be presented to a jury.

*1.     The Elements of Fawcett's Remaining Claims*

"Claims of insurer bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Sagdai v. Travelers Home and Marine Ins. Co.*, 639 F. Supp. 3d 1091, 1108 (W.D. Wash. 2022) (quoting *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (cleaned up)). "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). "If rational minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate." *Traulsen v. Continental Divide Ins. Co.*, No. 82507-1-I, 2024 WL 3327023, at *20 (Wash. Ct. App. July 8, 2024) (citing *Smith*, 78 P.3d at 1277–78).

A claim for violation of IFCA also requires a plaintiff to show that an insurer's conduct was unreasonable. Specifically, IFCA provides that a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action … to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs[.]" WASH. REV. CODE § 48.30.015(1); *see also Young v. Safeco Ins. Co. of Am.*, No. 20-CV-01816-LK, 2022 WL 4017893, at *7 (W.D.

Wash. Sept. 2, 2022) (explaining that "IFCA creates two circumstances under which an insurer may be liable: when it unreasonably denies a claim for coverage or when it unreasonably denies a payment of benefits").

A claim for violation of Washington's CPA has five elements: (1) the defendant engaged in an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) resulting in injury to the plaintiff's business or property; (5) that was proximately caused by the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safety Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). An insurer's unreasonable conduct in denying an insurance claim can satisfy the first element of a CPA claim. *See, e.g.*, *Am. Manufacturers Mut. Ins. Co. v. Osborn*, 17 P.3d 1229, 1235 (Wash. Ct. App. 2001).

A claim for negligent claims handling requires a plaintiff to show that the defendant insurer failed to use ordinary care. *See, e.g.*, *Rybacki v. Progressive Cas. Ins. Co.*, No. 84676-1-I, 2023 WL 8544775, at *9 (Wash. Ct. App. Dec. 11, 2023) (explaining that negligence and bad faith claims are "separate and distinct" because an insurer "may fail to use ordinary care yet still not act in bad faith" (quoting *First State Ins. Co. v. Kemper Nat. Ins. Co.*, 971 P.2d 953, 959 (Wash. Ct. App. 1999))). A claim for negligent claims handling requires a plaintiff to establish duty, breach, causation, and damages. *Id.*

   2.  *Whether Travelers' Conduct Was Reasonable Is a Question of Fact.*

In this case, Travelers argues that because it had a reasonable basis for the entirety of its conduct with respect to Fawcett, it is entitled to summary judgment on Fawcett's claims for bad faith and violation of IFCA and the CPA. Dkt. No. 25 at 8–28.

Travelers repeatedly describes its conduct as reasonable, and asserts that it was entitled to rely on some of its experts over other experts, and entitled to appeal the arbitration decision and demand a *de novo* trial. *See* Dkt. No. 25 at 18–27. Travelers has failed to establish the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

reasonableness of its conduct as a matter of law, however.  Generally, whether an insurer acts in bad faith or uses ordinary care is a question of fact.  *See Leahy v. State Farm Mut. Auto. Ins. Co.*, 418 P.3d 175, 186 (Wash. Ct. App. 2018) (finding that a "clear conflict" of opinion between experts as to causation precluded insurer from claiming "that there was no genuine issue of material fact on the reasonableness of its action in solely relying on its expert"); *First State*, 971 P.2d at 959 ("It is for the trier of fact to resolve the issue of whether the insurer acted in bad faith and breached the duty of ordinary care.").

Fawcett has put forward evidence from which a reasonable fact-finder could conclude that Travelers was unreasonable and/or failed to use ordinary care in disputing causation, particularly in light of the conflicting medical opinions available to Travelers in the underlying litigation, including at least one report from a physician retained by Travelers opining that Fawcett's injuries were indeed caused by her accident.[3]  *See, e.g.*, *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1108–09 (W.D. Wash. 2017) (finding that a genuine dispute as to whether State Farm reasonably found that a plaintiff's injuries were not caused by the accident precluded summary judgment on either a bad faith or IFCA claim).  That Travelers originally retained that physician, Dr. Ward, for purposes of investigating the PIP claim rather than the UIM claim is not dispositive, given that Fawcett alleges that Travelers' UIM adjusters reviewed Dr. Ward's report.  *See* Dkt. No. 33 at 10; *see also* Dkt. No. 35-21 at 3, 6 (UIM adjusters' notes referencing Dr. Ward's reports).

Fawcett also alleges that one of the neurosurgeons whose opinions Travelers relied upon was not provided with complete and updated records, and was, in one instance, provided with an

---

[3] Fawcett's opposition brief contains a lengthy summary of facts from which she suggests that Travelers' conduct was unreasonable for numerous reasons.  *See* Dkt. No. 33 at 3–18.  The Court need not detail all of those allegations here because there are sufficient questions of fact as to Travelers' handling of the causation dispute to, alone, render this matter unsuitable for summary judgment.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

MRI pertaining to a patient who was not Fawcett. Dkt. No. 33 at 15–16 (referencing Dkt. No. 26-7 at 11–12, Dkt. No. 35-24). These allegations could support the conclusion that Travelers unreasonably disputed causation and, as a result, undervalued Fawcett's claim.

Although Travelers' motion (Dkt. No. 25 at 3–8, 18) emphasizes that it retained the right to dispute causation as it investigated Fawcett's claims, throughout the arbitration process, and by proceeding to a *de novo* trial, it has not established that this conduct was reasonable as a matter of law. Because the evidence could support a finding for either party, summary judgment is not appropriate. *See Jin v. GEICO Advantage Ins. Co.*, 700 F. Supp. 3d 988, 993 (W.D. Wash. 2023) (finding that because the plaintiff's medical expert opined that a car accident caused his tinnitus and the insurer's expert reached the opposite conclusion, "an issue of fact surrounds the Court's inquiry about whether [the insurer] conducted a 'reasoned evaluation of the facts'[,]" precluding summary judgment for the insurer (quoting *Langley v. GEICO Gen. Ins. Co.*, 89 F. Supp. 3d 1083, 1092 (E.D. Wash. 2015))).

       3.    *The Cause of Action for Negligent Claims Handling Is Available in the UIM Context.*

Travelers' motion asserts that although Fawcett's complaint includes a claim for negligent claims handling, Washington law does not support this cause of action in the context of a UIM claim. Dkt. No. 25 at 28–29. Travelers acknowledges that multiple Washington cases reference a negligence cause of action in non-UIM contexts, and that multiple Washington courts have referenced the cause of action in the UIM context in unpublished decisions, but asserts that no "binding Washington authority" supports this cause of action in the UIM context. Dkt. No. 42 at 13.

The Court is aware of at least one published decision referencing a negligence cause of action in the UIM context. *See Metro. Grp. Prop. & Cas. Ins. Co. v. Fite*, __ F. Supp. 3d __, 2024

WL 3201262, at *8–9 (W.D. Wash. 2024). Even if the existence of the cause of action was not disputed in that case, as it is here, the Court finds that it and the other unpublished authorities cited by the parties provide sufficient support to allow this claim to go forward despite Travelers' objection.

### C. Fawcett's Allegations of Injury Are Sufficient to Withstand Summary Judgment.

The parties do not dispute that, as an element of each claim Fawcett maintains against Travelers (as listed above), Fawcett must show that she was injured by Travelers' conduct challenged in this suit. In her initial disclosures, Fawcett indicated that she

> seeks full recovery of her compensatory damages [that] include, but are not limited to, the value of the wrongfully delayed claim ($849,016.44), the value of the wrongfully delayed policy benefits ($510,000.00), attorney's fees and costs incurred outside the IFCA action in establishing the value of the wrongfully delayed claim ($219,026.00), interest from the date that the claim should have been paid under applicable insurance regulations, to the date of IFCA judgment or actual payment. Actual damages under IFCA may also be subject to trebling and Plaintiff is entitled to attorney fees and costs for this IFCA action.
>
> Plaintiff will also be seeking general damages including emotional distress, inconvenience, humiliation, and any other subjective nonmonetary losses pursuant to RCW 4.56.250(1)(b) that shall be proven at trial. The exact computation of general damages by Plaintiff is not possible in such a case, which is why such damages are wholly within the province of the trier of fact[.]

Dkt. No. 28-2 at 6–7.

Travelers argues that Fawcett has failed to quantify any damages attributable to Travelers that she has not already recovered, namely the settlement from the at-fault driver ($250,000), the full amounts available under the policy ($510,000) and the attorney's fees and costs incurred in the underlying litigation ($219,026). Dkt. No. 25 at 23. Travelers' motion suggests that because Fawcett has not quantified her damages beyond those referenced in her complaint and initial disclosures, and that because some of the damages quantified in the initial disclosures have already

been recovered, she has failed to identify with specificity damages recoverable on the claims presented in this lawsuit. *Id*. at 23, 25, 27–28.

Fawcett's opposition suggests that she would be entitled to recover "the amount of the wrongfully withheld benefits ($500,000)," but does not acknowledge that she has already received that amount from Travelers in the underlying litigation. *See* Dkt. No. 33 at 21. Fawcett's opposition brief also identifies other damages that could be recoverable, however, such as damages for the loss of use of her PIP funds or for the costs of investigating a CPA claim. *See id*. at 21, 22.

The Court finds that there is a question of fact as to whether Fawcett has incurred actual damages caused by Travelers' challenged conduct, and to the extent that she can prove that she is entitled to those amounts at trial, she can recover them. *See, e.g.*, *Sagdai*, 639 F. Supp. 3d at 1111–12; *Bennett v. Homesite Ins. Co.*, 636 F. Supp. 3d 1267, 1274 (W.D. Wash. 2022) ("It will be up to the [plaintiffs] to convince the jury that they suffered compensable damages proximately caused by [the defendant's] violations of IFCA."); *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1311–12 (W.D. Wash. 2013); *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 903 (Wash. 2009). Fawcett also alleged general noneconomic damages and described them in more detail at her deposition (Dkt. No. 28-1 at 143–53, Dkt. No. 28-2 at 6–7), and these damages could be attributable to Travelers for purposes of her bad faith, IFCA and negligence claims. *See Beasley v. GEICO Gen. Ins. Co.*, 517 P.3d 500, 514, 516 (Wash. Ct. App. 2022); *Fite*, 2024 WL 3201262, at *8–9.

Because Fawcett's allegations support an inference that she was injured by Travelers' conduct challenged here, she should have an opportunity to prove her damages at trial. Although Travelers cites *Cardenas v. Navigators Insurance Company* for the proposition that Fawcett's failure to provide a declaration to support her actual damages is insufficient to withstand summary judgment, that case is distinguishable. *See* Dkt. No. 42 at 9–11. In that case, the plaintiff's claims

failed primarily because the insurer had not breached any duty owed to the plaintiff and plaintiff had failed to raise an issue of fact as to whether the insurer's conduct was reasonable, and thus plaintiff could not have been harmed by the insurer's conduct. No. C11-5578 RJB, 2011 WL 6300253, at *4–8 (W.D. Wash. Dec. 16, 2011). The *Cardenas* court did not discuss the method by which the plaintiff was required to establish the existence of harm because that element of plaintiff's claims failed for more fundamental, and less practical, reasons than those argued in this case. The Court therefore finds that *Cardenas* provides little support to Travelers' position here.

Furthermore, although Travelers contended at oral argument that any loss of use of the PIP funds on Fawcett's part was not caused by Travelers' conduct because Travelers did not require her to set aside $10,000 of her settlement proceeds, summary judgment does not afford the appropriate vantage point from which to determine which of Fawcett's potential damages are attributable to Travelers. That question will be resolved by the jury after the issues have been fully aired. *See, e.g.*, *Dees*, 933 F. Supp. 2d at 1312 ("As [the plaintiff] has not yet quantified her damages, the court will not issue an advisory opinion as to whether [her] injuries in this case constitute injury under the CPA. The court encourages the parties to address the issue in their trial briefing.").

D.  **The Court Will Not Resolve at This Time Whether Fawcett Is Entitled to *Olympic Steamship* Fees.**

An insured is entitled to an award of attorney's fees "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Olympic Steamship Co., Inc. v. Centennial Ins. Co.*, 811 P.2d 673, 681 (Wash. 1991). Disputes over the value of a claim presented under a policy are not governed by *Olympic Steamship*; only disputes as to coverage fall within its rule. *See Dayton v. Farmers Ins. Grp.*, 876 P.2d 896, 898 (Wash. 1994) ("Legitimate

differences of opinion in the value of a claim negotiated in good faith do not deprive an insured of the benefit of coverage bargained for and mandated by statute.").

Travelers argues that because it did not dispute coverage, but only disputed the value of Fawcett's claim, she is not entitled to a fee award under *Olympic Steamship* to the extent she prevails in this action. Dkt. No. 25 at 29. Fawcett disagrees that this case does not present a question of coverage: she characterizes this case as a dispute about "the extent of the benefit provided by an insurance contract," which *would* entitle her to *Olympic Steamship* fees. Dkt. No. 33 at 24 (quoting *Jin*, 700 F. Supp. 3d at 995).

The Court cannot determine at this time whether Fawcett would be entitled to recover fees under *Olympic Steamship* based on the factual disputes that preclude summary judgment on her remaining claims. The jury's findings as to the reasonableness of Travelers' conduct will inform whether *Olympic Steamship* fees are available. *See Jin*, 700 F. Supp. 3d at 995. Thus, the Court will not rule as a matter of law on Fawcett's entitlement to *Olympic Steamship* fees at this time. *See Bennett*, 636 F. Supp. 3d at 1275–76.

//
//
//
//
//
//
//
//
//
//

### III.  CONCLUSION

For these reasons, the Court GRANTS IN PART Defendant's motion for summary judgment to the extent that Plaintiff agrees to dismiss her claims for breach of contract and breach of fiduciary duty but DENIES Defendant's motion in all other respects.[4]  Dkt. No. 25.

Dated this 4th day of October, 2024.

Kymberly K. Evanson
United States District Judge

---

[4] Travelers' reply brief included a request to strike the declaration of Fawcett's counsel, Vernon Harkins, to the extent it reflects an attempt to testify to substantive issues, after he previously agreed that he would not do this.  Dkt. No. 42 at 3.  The resolution of the summary judgment motion does not require the Court to rely on the Harkins declaration (Dkt. No. 35) itself, although the Court does cite attachments thereto.  The attachments to the Harkins declaration do not constitute Harkins' substantive testimony, and therefore the motion to strike the Harkins declaration is DENIED as moot.
    Travelers' reply also requests that the Court strike the declaration of Mary Owen, whose testimony is the subject of a separate motion to exclude.  Dkt. No. 30, Dkt. No. 42 at 2.  The resolution of the summary judgment motion does not require the Court to rely on the Owen declaration, and thus the motion to strike it is also DENIED as moot.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14